1839.

THE WEST
POINT FOUNDRY
ASSOCIATION
v.
BROWN.

THE WEST POINT FOUNDRY ASSOCIATION v. BROWN and (thirteen) other defendants.

Persons who subscribe for shares in joint stock companies and pay deposits, but do not comply with the full conditions of the association and never become entitled to profits, are not liable for debts, unless they are active in contracting them or hold themselves out as partners. The same principle will apply, as far as it can, to a suggested limited partnership not carried through. *It would seem* that there can be a limited partnership in the running of a steamboat.

*Feb.* 21,22, 1839.

*Partnership.*

THE present suit was brought to try and fix the defendants, as partners in a joint stock company, with a debt of three thousand five hundred dollars, contracted in repairs upon the steamboat "Matilda."

These repairs were done upon the request of the defendant, John Voorhis, and at a time when he appeared by the records at the custom-house as owner of the boat.

There had been a proposition to turn the barge "Matilda" into a steamboat, and ply her between Sing Sing and New-York. The defendants had had meetings, and subscribed for stock. There was a hope that a charter could be had; but as the prospect of this became very doubtful, it was finally agreed that a limited partnership should be formed under the act of the 17th of April, 1822. However, the whole of the stock was never subscribed for, nor had the provision under the partnership act been complied with. The repairs had, in the meantime, been done; and the question was upon the liability of the defendants.

Mr Robertson and Mr. Selden, for the complainants

Mr. James Smith and Mr. Sherwood, for the defendants.

*October* 7,

THE VICE-CHANCELLOR: It appears that the defendants did not become part owners with Voorhis of the vessel. Such was not their object; nor was it his intention to make them joint owners with him of integral parts of the vessel,

either while she remained a barge or after she should be converted into a steamboat. The legal title and control and management of the vessel was to remain and did remain in Voorhis, as is shown by his taking the oaths of ownership att he custom house, on two occasions, before and after she was altered into a steamer. The object was, to create a fund by a joint stock association. The capital stock of the association was to be the boat and her machinery and equipment; and the running of the boat the business in which that company or association were to be engaged. This was to be accomplished, not by the subscribers to the stock becoming part owners or joint owners with Voorhis in the vessel, or by the liabilities attached to them in that capacity, or by forming a general partnership in the business of running a steamboat, but by organizing a limited partnership under the statute. The latter plan was the one agreed upon; and it was with a view to form such a connection that most of the subscribers took shares and gave their notes or advanced their money. Perhaps the defen dant, Benedict, may not be considered as entering into this ar rangement, even with the view of being a special partner, but only as lending money to Voorhis to promote the object of having a boat to run on the route, and taking from him security in the nature of a lien or mortgage for its re-payment. As a mortgagee out of possession, he would not be liable for the debts of the boat; and, as special partners under the statute, none of the defendants now sought to be charged would be liable beyond the capital put in. I see no objection to the formation of such a partnership under the statute in the business of a steamboat, and the intention of the parties ought to be regarded in ascertaining what are their legal liabilities, provided their acts are not so at variance with such an intention as to mislead those who deal with them.

Although the plan of a limited partnership was not carried into effect for want of a sufficient amount of capital subscribed, it does not follow that the parties were to be deemed general partners in the mean time and until the requisites of the statute could be complied with in respect to the intended limited partnership. In forming joint stock companies, persons who subscribe for shares, and even pay deposits, and do other acts showing an intention to become partners or associates

but who afterwards fail to comply with the terms or conditions of the society, and never become entitled to share the profits, or who, from any cause, find the attempt to form the company abortive, are not liable, as general partners, for the debts which may have been contracted, unless indeed they have been active in contracting the debts, or have held themselves out to the world in the character of actual partners. Those only are liable who enter into the contracts ; and they are not supposed to have authority to bind others until the formation of the company or partnership is completed : Collyer on Part. 617 to 634, and the cases there cited. The same principles apply here. Until the limited partnership was formed, or, if a general partnership or joint-stock company had been in contemplation, until the same was consummated, Voorhis had no authority, express or implied, to bind his proposed associates or partners. He had the control as general manager of the enterprise ; contracted the debts in question ; received the defendant's subscription and money upon the basis of its being a limited partnership, and he had no authority to bind them by his acts to any greater extent ; nor do I perceive that they have held themselves out to the world in any other capacity, or done acts to make themselves individually or collectively responsible, as general partners with Voorhis in the business of fitting up and running the steamboat, or as part owners with him of the vessel.

This bill must be dismissed, as to all the defendants, with costs, except Voorhis, who did not appear on the hearing but suffered a default. The complainants are at liberty to take a decree against him for the amount of their demand, with interest and costs.